Simon J. McNally v. George L. Colwell.

91 527
91 538

91 527
115 635

91 527
117 87

91 527
f122 426

Negligence—Accidental fires—Liability of mill-owner for failure to provide appliances for extinguishing—Evidence.

1. Evidence that the engineer and fireman of a mill were in the habit of using intoxicating liquor, and were sometimes seen under its influence, is inadmissible, in a negligence suit against their employer to recover damages sustained by reason of the accidental burning of the mill, in the absence of proof that such liquor habit, or occasional intoxication, had any bearing whatever upon the origin of the fire, or in any way prevented its extinction.

2. If fire is liable to originate in a boiler and engine room, and the construction of the mill is such that the surroundings are inflammable, so that the fire is liable to spread rapidly when once ignited, it is incumbent upon the person operating the mill to take care that the fire does not consume the mill, and spread to other property, by keeping on hand not only persons to watch the fire and keep it within the furnace, but such appliances for extinguishing it, in case of its accidental escape and communication to the building, as an ordinarily prudent man would provide under like circumstances.

3. The liability of such person in such a case cannot be governed by the practice in other mills at other places, and necessarily under different conditions and surroundings, and evidence of what was done in other mills in the way of providing such appliances is irrelevant.

4. It does not require any special knowledge, beyond that presumably open to a jury in a lumbering country, to determine what means would be safe or ordinarily prudent to be used to put

out fires in an engine and boiler room or saw-mill, and expert testimony is not admissible on that line of investigation.

Error to Alcona. (Simpson, J.) Argued February 11, 1892. Decided May 13, 1892.

Negligence case. Defendant brings error. Reversed. The facts are stated in the opinion.

*R. J. Kelley*, for appellant.

*W. E. Depew (Frank Emerick*, of counsel), for plaintiff.

MORSE, C. J. Plaintiff sued to recover for the value of certain pine lumber alleged to have been destroyed by fire through the negligence of the defendant. The plaintiff had verdict and judgment for $2,636.

Colwell owned the only saw-mill in Harrisville, Alcona county, Mich., and the lumber burned was piled on the docks that ran from the mill out into the lake. This lumber was sawed and piled upon the docks by Colwell from logs owned by plaintiff, Colwell receiving a certain sum per thousand feet for sawing and piling. This lumber was on the docks awaiting shipment. The fire originated in the boiler room of defendant's mill. A strong wind was blowing at the time from the direction of the mill towards the lumber. The mill was burned, and the fire spreading therefrom consumed the docks and lumber upon them. No fault was found with the construction of the boiler room, and the question of defendant's negligence was submitted to the jury upon two points:

*First.* Was the defendant negligent in knowingly employing an engineer and fireman in the mill who were incompetent to perform their duties by reason of their use of intoxicating liquors?

*Second.* Was the defendant negligent in not having the

proper appliances in the mill for putting out fires that might arise there?

At the close of the direct evidence on the part of the plaintiff, defendant's counsel moved for a direction to the jury to find a verdict for the defendant. This the court refused, and, at the end of the trial, submitted the case to the jury upon the two propositions stated above.

The court was in error in submitting the first question to the jury. There was testimony tending to show that the engineer and fireman were in the habit of using intoxicating liquors, and were sometimes seen under the influence of such liquors; but such liquor habit, or occasional intoxication, was not shown to have had any bearing whatever upon the origin of the fire, or to have had anything to do towards preventing its extinction. In the case of *Cowley v. Colwell, post,* 537, which was argued in this Court in connection with this case and which was an action for lumber destroyed by this same fire, the circuit judge correctly, as we think, upon nearly, if not identically, the same evidence as in this case, withdrew this question of the use of intoxicating liquors by these employés of the defendant from the jury. It should have been withdrawn in this case.

In the boiler room of defendant's mill there was a water tank about six feet high and five or six feet in diameter, filled with water from a pond which came up to the westerly end of the mill. The tank was supplied by a pipe leading from the pond, and there was sufficient head to keep it constantly filled. On the northerly side of the saw-mill was a gristmill run by water, and the sluice for waste water ran between the two mills. There was also a sluice for the waste water of the mill pond which ran directly through the lower part of the saw-

91 MICH.—34.

mill. The water was conveyed in a box about three feet wide by two feet deep, which stream of water·was running through the mill at the time of the fire. At the time of the fire there were four or five pails in the mill, and one in the boiler room, sitting under a faucet in the tank. There was no pump in the mill, nor any hose, at the time of the fire, although hose had been in use before that time for wetting down the boiler room, but had become worn and useless.

The contention of plaintiff on the trial was that there should have been a pony pump and sufficient hose in the boiler room to throw water upon the walls, and that, if there had been, the fire could have been extinguished when first discovered. The declaration averred negligence in this regard, in that the defendant—

"Did not keep upon said premises any hose, or pails, or barrels of water, or axes, or the like, whereby, on the day and year aforesaid [July 6, 1888], a fire having broken out upon said premises, and there being no means of extinguishing the same, the fire was communicated to the said lumber of the plaintiff, and the same was wholly lost and destroyed."

This is a peculiar case. No negligence is charged in the origin of the fire, but the defendant is sought to be held liable because he neglected to keep upon his premises proper and sufficient appliances to prevent the spread of an accidental fire starting upon his premises and within the inclosure of his boiler room in his mill. Nearly all of the cases found in the books have arisen from negligent fires communicated from sparks from locomotives and steamboat smokestacks, or from manufacturing chimneys, or from fires set out in the open air upon the premises of the owner, and escaping therefrom. The question here is a new and novel one to me. If there is any liability here, from what duty does it arise? and what is

the extent of the duty, if there be one, of the owner of a house, store, barn, mill, or other building, who has taken every and all necessary precaution to prevent the breaking out of a fire within the building, to keep in such building appliances for extinguishing fire, and to prevent its spreading to the property of others? Does the same rule apply to a mill that would govern the case of a store, barn, or dwelling-house, and, if not, why not?

The circuit judge instructed the jury that the defendant, in reference to the property of the plaintiff, was bound to exercise such care, and no more, to prevent the destruction of the same by fire, as a man of ordinary prudence and caution, under all the circumstances, would exercise in reference to property similarly situated, of the same kind and character, belonging to himself; that he was not obliged, as a matter of law, to have a pony pump or hose in his mill; he could have pails if he saw fit, provided the jury found that pails would so protect from the spread of fire that an ordinarily prudent man would have used them under like circumstances.

The claim that the defendant ought to have had a pony pump upon his premises should not have been permitted under the pleadings, as there was no allegation in the declaration that it was the duty of defendant to have such a pump, or that he was negligent in not having it; nor do I think that he was obliged to have and keep hose in the mill under the circumstances of its situation and surroundings.

After much research, I have been unable to find a case at all like the present, or anything in the text-books bearing directly on the question involved here. If a fire is carefully set and maintained within one's own building, in the management of a lawful buiness, and all proper precaution taken to prevent its escape, what is the duty of the owner of the building, in case fire does occur, or

escape by accident, as to keeping on hand, within the building, appliances to prevent the spread of such fire, and to extinguish it.

Under the old common law of England, one whose house or building was burned by accident was liable for the destruction of his neighbor's property caused from fire communicated from such burning house or building. This rule was so manifestly unjust that, in 1707, parliament passed an act providing that no action should be maintained "against any person in whose house or chamber any fire shall accidentally begin." 6 Anne, c. 31, par. 67. This statute, being enacted before the separation of the Colonies from the mother country, is generally accepted as a part of our common law. In 1774 this statute was extended to fires originating in a "stable, barn, or other building," or on the estate of any person. 14 Geo. III. c. 78, par. 86. This last statute is not so generally accepted as part of the common law of this country by our courts. It is said in Shearman & Redfield on Negligence that both of these statutes are part of our common law (4th ed. § 665); but it is held in some of the states that the latter statute, being passed on the eve of our Revolution, never became a part of our common law. *Spaulding v. Railway Co.*, 30 Wis. 110. These statutes, however, have generally been held to relieve the owner of real property from the consequences of the spread of fire from his premises only in cases where the fire results from pure accident, free from any culpable negligence. Shear. & R. Neg. (4th ed.) § 665.

I am satisfied that, in case of a dwelling-house or chamber, there could be no liability against the owner for property destroyed by a fire accidentally, and without negligence, beginning in such dwelling-house, because, in the opinion of a jury, he did not keep on hand at all times proper appliances to put out a fire, in case one

should accidentally arise. And the same rule would apply to stables, barns, and outbuildings, where fire was not kept for the purpose of manufacturing, but for dómestic uses. But I am inclined to think there is a difference between fires kept in a house or other building for domestic purposes and fires for the generation of steam to run machinery, or in blast and other furnaces used for manufacturing purposes. The care to be used must always be in proportion to the risk involved. If properly and carefully set and managed, the breaking out of fire, in dwelling-houses and buildings used for domestic purposes, is an uncommon occurrence, and one not to be generally expected; but in the use of fire for manufacturing purposes the risk is greater, and constant care is in some cases required to prevent its escape, and accidental fires are more frequent. If, therefore, fires are liable to originate in engine and boiler rooms, and the construction of the mill is such that the surroundings are inflammable, so that the fire is liable to spread rapidly when once ignited, it would be incumbent upon the person operating the mill to take care that the fire should not consume the mill, and spread to other property, by keeping on hand not only persons to watch the fire and keep it within the furnace, but some appliances for extinguishing fire in case it should accidentally escape and ignite some part of the building. The fire in the boiler or engine room should not only be well guarded to prevent accidental fires, but some provisions ought to be made to prevent such fires spreading, and to extinguish them. This would suggest itself, it seems to me, to an ordinarily prudent man in the care of his own property.

"The careful setting and keeping of fires in one's dwelling-house, shop, field, or elsewhere, for a useful purpose, creates no liability to another injured by its

spreading through some accident not reasonably to be anticipated. But a fire set or looked after negligently, if by reason of such negligence it communicates to a neighbor's property and destroys it, will give the neighbor an action for the damages." Bish. Non-Cont. Law, § 833.

Could this fire in the boiler room of defendant be said to be well guarded and kept, unless some appliances were there for the purpose of speedily extinguishing accidental fires in such room? I think not. And, if any means or appliances for such purpose were required, then they must be such as an ordinarily prudent man would have provided under like circumstances.

The nearest case to the present that I have been able to find is that of *Hauch v. Hernandez,* 41 La. Ann. 992 (6 South. Rep. 783). In that case fire was communicated from a porcelain factory to the saw-mill of plaintiff, destroying it. Held, that the owners of the factory were liable. The furnace and kiln of the factory were well constructed, of the best materials. The equipments for extinguishing fires were about the premises, though it was shown in the proofs that part of them were out of order. The court said that the defendants in the construction of their works seemed to have done all that was required and necessary for the protection of their own and their neighbors' property. It was shown that there were partitions built of dry pine lumber not far from the walls of the kiln. It was also shown that the greatest care and watchfulness were required about the kiln from the time of ceasing the feeding of the fires, when the mouths of the furnace were closed, and the heat was at its intensity, until it was cooled. Upon the day of the fire, after the furnace doors were closed, the watchmen left the building. This was held to be negligence. The fire evidently originated from the heat of the kiln igniting the partition. The fire broke out in this woodwork, about 10 feet from the kiln, and was

caused by the excessive heat from the kiln. It is said that it was the duty of the defendants to have the kiln and furnace guarded by experienced employés during this critical time of intense heat, but the proofs showed an abandonment of the premises by the watchmen, which was negligence.

If the abandonment of the premises by watchmen at the time was negligence, would it not also have been negligence if the watchmen had remained at their posts, but been provided with no means of extinguishing a fire which was likely to occur from the action of the heat upon this dry woodwork? So in the case of a saw-mill, like the one operated by defendant in the case before us, where it is reasonably to be anticipated that fires may break out, ought there not to be some appliances to put them out? It is clear to me that to operate such a mill without any appliances, or any means at all, to extinguish fires, would be negligence as a matter of law. And if means are provided they should be such as an ordinarily prudent man would use, having due regard to the safety of his own property and that of his neighbors, and considering the situation and surroundings of his mill. The court, therefore, did not err in refusing to direct a verdict for the defendant.

The plaintiff was permitted to show that the usual means employed in saw-mills at Au Sable was by using the waterworks and keeping hose, and that in Springport and Greenbush they had a "pail brigade." This was error. The defendant's liability, in any event, could not be governed by the practice in other mills at other places, necessarily under different conditions and surroundings; nor would it, in my opinion, be competent to show how another mill, if situated exactly as this one was, was equipped and protected against fire. There is nothing so uncommon about the knowledge of the spread

of fire, or the construction of a saw-mill like this one, as to warrant expert evidence as to what means an ordinarily prudent man would take to prevent the spreading of fire in such a mill to save his own property. The jury, upon being made acquainted with the construction of the saw-mill, its location and surroundings, were competent to judge of the proper appliances to be used by an ordinarily careful man in the extinguishment of accidental fires liable to occur in this boiler room. What was done in this regard in other mills was irrelevant, and could have no effect other than to mislead the jury and prejudice the defendant's case.

A witness was allowed to testify that, in the same month and year of this fire, at the mills in the city of Alpena, as a rule, the appliances for fire protection were a force pump and hose, "and certainly barrels of water and pails would be needed." Witnesses were also permitted to give their opinions whether it would be safe to operate the engine room of defendant's mill without having any appliances, "any hose or other appliance, except, possibly, a couple of pails, to put out fire." As before said, this was not a question for expert evidence or opinion of witnesses. It does not require any special or particular knowledge, beyond that presumably open to a jury in a lumbering country, to determine what means would be safe or ordinarily prudent to be used to put out fires in a boiler room or mill like that of the defendant in this case. It is best to limit expert testimony to its proper uses, since it is not now held in the highest esteem; nor has it been found to be free from the infirmities and temptations that belong to human nature. And since a man's opinion cannot be met and tested, as could his testimony to the existence of a fact, expert evidence, while useful in many cases, is dangerous in all, and should be restricted, for the purpose of

accuracy in determining the truth, which is the aim of all judicial investigation, to those cases where its use is well nigh indispensable because of questions of science or skill being involved, in which a special and peculiar knowledge is desired in order to arrive at the truth.

'There was also error in permitting a witness to testify that one of the hangers in the boiler room of this mill was charred by fire in 1884 or 1885. Such fact had no possible legitimate bearing upon the issue, and its admission in evidence was to defendant's prejudice. The judgment is reversed, and a new trial granted, with costs of this Court to defendant.

The other Justices concurred.