JOHNSON v CITY OF DETROIT

1. EVIDENCE—EXPERT TESTIMONY—JUDGE'S DISCRETION—ABUSE OF DISCRETION.

Admission or exclusion of expert testimony is within a trial court's discretion and an exercise of that discretion will not be reversed except where it is clearly abused.

2. EVIDENCE—EXPERT TESTIMONY—CRITERIA FOR EXPERT TESTIMONY.

Three criteria must be satisfied for testimony to be admitted as expert testimony: (1) there must be an expert; (2) there must be facts in evidence which require or are subject to examination and analysis by a competent expert; and (3) there must be knowledge in a particular area that belongs more to an expert than to the common man.

3. EVIDENCE—EXPERT TESTIMONY—EXCLUSION OF TESTIMONY—GOLF COURSE DESIGN.

Testimony regarding the design of a golf course, offered as expert testimony by a plaintiff who was injured when struck by a driven golf ball, was erroneously excluded from evidence where the offered testimony met the requirements for admission as expert testimony, where the jury verdict was adverse to the plaintiff, and where the excluded testimony, as presented in the offer of proof, might well have changed the result.

Appeal from Wayne, Carl F. Ingraham, J. Submitted June 23, 1977, at Detroit. (Docket No. 29791.) Decided October 25, 1977.

Complaint by Roland R. Johnson and Kathleen Johnson against Robert H. Scheuer and the City of Detroit for damages for injuries suffered by Roland R. Johnson when struck by a golf ball on a municipal golf course. Plaintiffs settled with defendant

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 31 Am Jur 2d, Expert and Opinion Evidence § 16.
[3] 31 Am Jur 2d, Expert and Opinion Evidence § 7.

Scheuer prior to trial, and the case was continued against the City of Detroit only. Judgment for defendant. Plaintiffs appeal. Reversed and remanded.

*Plunkett, Cooney, Rutt, Watters, Stanczyk & Pedersen* (by *Frank W. Brochert* and *John P. Jacobs),* for plaintiffs.

*Jaffe, Snider, Raitt, Garratt & Heuer, P. C.* (by *Brian G. Shannon),* for defendant.

Before: BEASLEY, P. J., and V. J. BRENNAN and J. R. McDONALD,* JJ.

BEASLEY, P. J. On May 12, 1972, while waiting on the fairway to hit his second shot on the eighth hole of Detroit's Rouge Park Golf Course, plaintiff-appellant, Roland R. Johnson, was struck in the eye by a golf ball, hit and hooked to the left by Robert H. Scheuer, from the tee area for the seventh hole.[1]

Plaintiffs seek damages against defendant City of Detroit for personal injuries, including loss of vision in one eye, claiming defendant city maintained and operated an unsafe and dangerous golf course. Plaintiffs' opening statement says that while the initial design of the golf course was satisfactory when it was built about 1928, that changes in the golf balls, the golf clubs and the ability of golfers make placing of the parallel adjoining fairways for the seventh and eighth holes, which are separated by rough of a width of

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] Originally, Robert H. Scheuer was a defendant in this case. Plaintiff settled his case against Scheuer for $5,000 after his discovery deposition had been taken. Prior to trial, Scheuer died and excerpts from his deposition were read to the jury as part of defendant City of Detroit's case.

only about 15 feet, dangerous and unsafe. Plaintiffs claim defendant should have taken steps to correct this condition either by redesigning the two holes, by planting shrubs and trees which would grow into a natural barrier, by erecting a protective screen as an additional barrier between the two fairways, or by placing warning signs, or by all of these measures.

After a two-day trial in July, 1976, a jury found no cause of action in favor of defendant city. Plaintiff appeals as of right. We reverse and remand for a new trial for the following reasons.

Plaintiff's first issue is that the trial court erred when it declined to allow plaintiff's expert to testify. The expert testimony was offered in the following context. After paying the usual green fees, plaintiff began to play a round of golf at Rouge Park Golf Course which is operated by defendant. At the eighth tee, plaintiff's drive came to rest about 250 yards down the fairway and off to the left. Then, while waiting to take his second shot, plaintiff was struck on the head by a ball hit from the seventh tee.

Although running in opposite directions, the seventh and eighth holes have contiguous fairways; 10 to 15 feet of rough separated the two fairways at the point where plaintiff was struck. In addition, testimony was offered to show that the layout of the seventh fairway would encourage golfers to play down the left side even though it is claimed that the common tendency of golfers is to slice to the right. Since the left side of the seventh fairway was the portion closest to the eighth fairway, playing down that side would increase the possibility of overlap between the areas in which drives would land from the respective tees.

The design and maintenance of these two fair-

ways form the basis of plaintiff's allegations of defendant's negligence. Plaintiff sought to introduce expert testimony to show negligence both in the design of the two fairways, as applied to present day golfing conditions, and in the failure of defendant, while maintaining the course, to provide protective screening or shrubbery between the two fairways.

The expert offered by plaintiff was William Newcomb of Ann Arbor. Extensive credentials were presented for Mr. Newcomb in regard to both his academic achievements and his actual experience with golfing, golf courses, and golf course design. Among other things, the evidence indicated that he had a Bachelor of Arts degree in architecture and a Master of Arts degree in landscape architecture from the University of Michigan. Golf course design was the subject of his master's thesis and of the courses he taught at both Michigan State University and the University of Michigan. As a golfer himself, Mr. Newcomb won the Michigan State Amateur championship in 1967 and coached the University of Michigan golf team. In addition, as a golf course architect and contractor, since 1965 he had designed over 50 golf courses and had redesigned some 20 more. It is clear that in golfing circles, Mr. Newcomb is a well-known and well-respected member.

The defendant opposed introduction of Mr. Newcomb's testimony on the ground that the absence of commonly accepted standards in the field precluded Mr. Newcomb from being considered an "expert". The defendant also argued that the testimony was unnecessary because the person who actually hit the drive had given a deposition in which he said that he was not trying to hit down the left side of the fairway and that he was not influenced by the layout of the seventh fairway in

any of the ways that plaintiff alleged. Finally, the defendant argued that the testimony was unnecessary because both the alleged negligence and the proposed remedies were well within the understanding of the jury without such assistance.

Before, during and after plaintiff's offer of proof, the trial court ruled that the expert testimony would not be admissible. The plaintiff's evidence, therefore, consisted of his own testimony and that of various employees of defendant whom he called under the adverse party statute. The defendant introduced some of the deposition of the person who had hit the drive. The jury then returned its verdict of no cause of action.

In general, it is true that it is within a trial court's discretion to admit or exclude expert testimony and that an exercise of that discretion will not be reversed except where it is clearly abused.[2] The uncontroverted evidence indicates that by education and experience, Mr. Newcomb qualifies as an expert in the design and construction of golf courses. To the extent, if any, that the trial judge's various rulings may be interpreted to hold otherwise, they are in error and constitute an abuse of his discretion.[3]

---

[2] *Coger v Mackinaw Products Co,* 48 Mich App 113; 210 NW2d 124 (1973).

[3] *See,* 2 Wigmore on Evidence (3d ed), § 555, p 634, as follows:

"(2) It follows that *there are no fixed classes of expert persons,* in which a witness finds himself and remains permanently. A person may be sufficiently skilled upon one question and totally unskilled upon the next. He may be competent to say whether the deceased had gray hair, and incompetent to say what killed the deceased; competent to say whether the deceased was asphyxiated, and incompetent to distinguish between coal-gas and water-gas; competent to say whether a hatchet was sharp, and incompetent to say whether a stain upon it was human blood. Since experiential capacity is always relative to the matter in hand, the witness may, from question to question, enter or leave the class of persons fitted to answer, and the distinction depends on the kind of subject primarily, not on the kind of person.

The court rules provide:

".1 Harmless Error. No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding shall construe these rules to secure the just, speedy, and inexpensive determination of every action so as to avoid the consequence of any error or defect in the proceeding which does not affect the substantial rights of the parties." GCR 1963, 529.1.

However, this Court has not hesitated to reverse when abuse of discretion has resulted in a denial of substantial justice. In particular, when competent, material, and relevant evidence on an essential issue has been excluded, when the party offering the evidence has received an adverse factual determination of that issue, and when consideration of the excluded testimony might have resulted in a different finding, this Court has held the exclusion to be reversible error.[4]

The first portion of the *New York Central* analysis examines the evidence itself. In the context of expert testimony, the special test is that three criteria must be satisfied: (1) there must be an expert; (2) there must be facts in evidence which require or are subject to examination and analysis

"It is thus a mistake to think of experiential qualifications as sharply marked off into defined classes. Since the change of a trifling feature in the general fact asked about may render the competent witness now incompetent, it is obvious that an accurate classification of topics with reference to experiential qualifications would involve divisions and subdivisions too numerous to conceive, and not of practical use." (Emphasis in original.)

[4] *New York Central R Co v Michigan Milk Producers Ass'n,* 3 Mich App 648, 652; 143 NW2d 590 (1966), *Central Fabricators, Inc v Big Dutchman Division of US Industries, Inc,* 62 Mich App 123, 130–131; 233 NW2d 212 (1975) (citing *New York Central, supra).*

by a competent expert; and (3) there must be knowledge in a particular area that belongs more to an expert than to the common man. *O'Dowd v Linehan.*[5]

Here, the offered expert testified that, although there were no published standards regarding the internal design of golf courses, there were, he thought, "some common accepted standards". In addition, he testified:

"Q [by Mr. Brochert, plaintiff's attorney] Are these standards, these unwritten standards, are they generally accepted throughout the community of design or people within the field of golf course design?

"A I think they accept certain numbers or certain widths that are acceptable or unacceptable.

"Q And that is in the layout what we are talking about here, specifically the separation of fairways?

"A Yes."

Mr. Newcomb, in the context of his credentials and these standards, satisfies the first requirement of *O'Dowd, supra,* that there be an expert.[6] The second requirement of *O'Dowd, supra,* that there be facts in evidence which are subject to an expert's analysis, is also satisfied both in the offer of proof regarding Mr. Newcomb, and in the other testimony concerning the golf course in question. Finally, the last requirement of *O'Dowd, supra,* regarding the need for the expert testimony, is satisfied in this case. It is true, as asserted by defendant, that the remedies proposed by the expert appear in large part to be based upon common sense. However, we also note that an answer or solution often appears obvious after it has been pointed out. We also note that, in this case, the record indicates that six of the jurors had no

---

[5] 385 Mich 491, 509–510; 189 NW2d 333 (1971).

[6] *See also, Farr v Wheeler Mfg Corp,* 24 Mich App 379; 180 NW2d 311 (1970).

golfing experience.[7] Finally, we note that at least one of the suggested remedies, that of changing the design of the holes, was exactly in the area of the offered expertise. In addition, since it is dependent upon such factors as golfers' average driving distance, etc., it is a remedy that cannot be said to relate solely to common sense and knowledge. Thus, we conclude that there was knowledge which belonged more to the offered expert than to the common man.

With the *O'Dowd* test satisfied, *New York Central* would then have us look to the actual jury verdict and to the effect the excluded testimony might have had. Neither consideration requires extended discussion. The jury verdict was adverse and the excluded testimony, as presented in the offer of proof, might well have changed the result.

Having reviewed all the considerations under *New York Central* for examining an exercise of judicial discretion in excluding evidence, we hold that the trial court committed reversible error when it declined to allow plaintiff's offered expert to testify. We, therefore, reverse and remand for a new trial.

Reversed and remanded.

---

[7] *Confer McNally v Colwell,* 91 Mich 527; 52 NW 70 (1892), wherein the Court ruled that the prudent method of putting out a fire in a sawmill was not a subject for expert testimony; the Court noted that the jury was all from lumbering country.