FRANCISCO v PARCHMENT MEDICAL CLINIC P.C.

Docket No. 77-2468. Submitted June 5, 1978, at Grand Rapids.—
Decided October 18, 1978. Leave to appeal applied for.

Plaintiffs, Ethel and Merton Francisco, filed suit in Kalamazoo
Circuit Court for damages arising out of the alleged malprac-
tice and breach of contract to cure by Drs. Hoekstra and
Hammer, employees of defendant Parchment Medical Clinic.
Dr. Hoekstra testified that Mrs. Francisco agreed to removal of
her breasts because of widespread fibrocystic disease. She con-
tradicted this and stated that the reason she consented to the
operation was because she was told by the doctors that she in
fact had cancer. Upon removal, the breasts were found to be
noncancerous. Donald T. Anderson, J., granted a directed ver-
dict for defendant on the ground that plaintiffs failed to estab-
lish any standard of care applicable to their cause of action.
Plaintiffs appeal. The questions on appeal are: (1) whether
plaintiffs established a standard of care for the treatment of
fibrocystic disease, and (2) whether plaintiffs established a
standard of care applicable to the treatment of cancer. *Held:*

1. The standard of care applicable to a general surgeon is the
standard of professional competence of similar physicians in
the community. Dr. Hammer qualified as a general surgeon of
the community and there is no showing of a violation of the
established standard of care for the treatment of fibrocystic
disease. The directed verdict insofar as it barred recovery for

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Appeal and Error § 886.
[2] 31 Am Jur 2d, Expert and Opinion Evidence § 3.
[3] 31 Am Jur 2d, Expert and Opinion Evidence § 26.
[4] 61 Am Jur 2d, Physicians, Surgeons, and Other Healers § 119.
Physicians and surgeons: standard of skill and care required of
specialist. 21 ALR3d 953.
[5, 7, 8] 61 Am Jur 2d, Physicians, Surgeons, and Other Healers § 207.
Malpractice testimony: competency of physician or surgeon from
one locality to testify, in malpractice case, as to standard of care
required of defendant practicing in another locality. 37 ALR3d
420.
[6] 5 Am Jur 2d, Appeal and Error § 881.

the alleged malpractice in regard to the treatment of fibrocystic disease was proper.

2. There was sufficient evidence to establish the standard of care applicable to the treatment of suspected cancer of the breast. A jury can believe or disbelieve testimony adduced at trial. If the jury believed that Mrs. Francisco submitted to the breast removal operation upon the representation that she had cancer, then they could have found that the medical clinic breached its duty of care in not following established medical procedures. The grant of a directed verdict under these circumstances constitutes error.

Reversed and remanded.

1. APPEAL AND ERROR—MOTIONS—DIRECTED VERDICT—EVIDENCE.

The Court of Appeals will view the evidence presented in the light most favorable to the nonmoving party when reviewing a trial court's order granting a party's motion for a directed verdict.

2. EVIDENCE—EXPERT TESTIMONY—JUDGE'S DISCRETION—ABUSE OF DISCRETION—APPEAL AND ERROR.

Admission or exclusion of expert testimony is within a trial court's discretion and the trial court's decision will not be disturbed unless it is clearly erroneous.

3. WITNESSES—EXPERT WITNESSES—COMPETENCE.

The parties offering the testimony of an expert witness must show that the witness possesses the necessary knowledge or skill to enable him to competently give such testimony.

4. PHYSICIANS AND SURGEONS—GENERAL PRACTITIONERS—SPECIALISTS —PROFESSIONAL COMPETENCE—MEDICAL MALPRACTICE.

General medical practitioners, including general surgeons, are held to the standard of professional competence of similar physicians in their community or one similar thereto.

5. PHYSICIANS AND SURGEONS—STANDARD OF CARE—EXPERT WITNESS TESTIMONY—ADMISSIBILITY—TESTS—MEDICAL MALPRACTICE.

The testimony of an expert witness as to the standard of care applicable to a general surgeon must first be qualified by a showing of knowledge of the local medical community and unfamiliarity with this medical community makes any testimony in regard to the applicable standard of care inadmissible.

6. PHYSICIANS AND SURGEONS—GENERAL SURGEONS—SPECIALISTS— JUDGE'S DISCRETION—ABUSE OF DISCRETION—MEDICAL MALPRACTICE—APPEAL AND ERROR.

A ruling that a physician is a general surgeon and not a special-

ist is within the discretion of the trial court and will not be reversed unless clearly erroneous.

7. PHYSICIANS AND SURGEONS—GENERAL SURGEONS—STANDARD OF CARE—PROFESSIONAL COMPETENCE—STANDARDS—MEDICAL MALPRACTICE.

Generally, the standard of care applicable to a general surgeon is held to the standard of professional competence of similar physicians in the community; however, cases may arise where the treatment in question (including the medical standard of care) is uniform throughout the United States so as to allow testimony of an expert who is unfamiliar with the local community.

8. PHYSICIANS AND SURGEONS—STANDARD OF CARE—EXPERT WITNESSES—WELL KNOWN AILMENT—ADMISSIBILITY—MEDICAL MALPRACTICE.

The expert testimony of a physician, unfamiliar with the local medical community, is inadmissible unless a foundation is laid showing that the treatment of the subject ailment is well known and uniform throughout the United States.

*Sloan, Zarbock & Risdon,* for plaintiff.

*Bennett, Palmer, Lewis, LaParl, Hollander & Stephens, P.C.,* for defendant.

Before: DANHOF, P.J., and V. J. BRENNAN and R. H. CAMPBELL,* JJ.

PER CURIAM. Plaintiffs filed suit in circuit court in Kalamazoo County on June 21, 1974, claiming damages arising out of the alleged medical malpractice and breach of contract to cure by Dr. George Hoekstra and Dr. John Hammer, employees of the defendant. Jury trial commenced on June 1, 1977, and plaintiffs closed their proofs on June 15, 1977. At that time defendant moved for a directed verdict claiming that the plaintiffs had failed to establish any standard of care to which the defendant could be held. The trial court granted the defendant's motion and the plaintiffs appeal by right. GCR 1963, 806.1.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

Plaintiff Ethel Francisco had a long history of prior breast problems including pain in the breast area. While plaintiff Ethel Francisco was under the care and treatment of doctors in Sturgis, Michigan, in 1963, a suspicious lesion was noted in her left breast and she was advised at that time that her breast might be cancerous. A biopsy was performed which disclosed no cancer, but Mrs. Francisco was diagnosed as having fibrocystic disease in both breasts.

Mrs. Francisco came under the care of Dr. Hoekstra on January 26, 1971, at which time she was complaining of severe pain in the left breast together with swelling and blueness in her left upper arm. At that time Dr. Hoekstra made a determination that she was in the healing stage of left mastitis with secondary axillary adenolymphangitis and pain medication was prescribed.

On four separate occasions from February 2, 1971, to February 8, 1971, Mrs. Francisco returned to Dr. Hoekstra complaining of severe pain in the chest and breast area. On February 8, 1971, Mrs. Francisco was admitted to Borgess Hospital for a mammogram study. The results of the study showed a suspicious nodule in the upper outer quadrant of the right breast together with widespread fibrocystic changes within the glandular tissues of both breasts.

Dr. Hoekstra discussed the results with plaintiff and indicated a possibility of cancer. Dr. Hoekstra also indicated that the mammogram study confirmed the presence of widespread fibrocystic disease in both breasts.

Dr. Hoekstra testified that the plaintiff agreed to the removal of her breast because of the widespread fibrocystic disease. Mrs. Francisco directly contradicted this and stated that the reason she

consented to the operation was that she was told by Dr. Hoekstra and Dr. Hammer that she in fact had cancer.

Dr. Hammer testified that Mrs. Francisco agreed to a biopsy of the suspicious nodule and then after a detailed discussion agreed to have both her breasts removed because of the fibrocystic disease. Upon removal the breasts were found to be noncancerous.

The trial court in granting the directed verdict in favor of the defendant held that the plaintiffs failed to establish any standard of care applicable to their cause of action. On appeal from the granting of a motion for directed verdict, this Court will view the evidence presented in the light most favorable to the nonmoving party. Since the evidence is contradictory as to whether the operation was performed for the treatment of fibrocystic disease or for the treatment of cancer, we must determine whether a standard of care was established for either treatment.

I. *Whether the plaintiffs established a standard of care for the treatment of fibrocystic disease?*

The thrust of the plaintiffs' argument under this issue concerns the trials court's ruling that two experts called to testify as to the applicable standard of care were unfamiliar with the locality of Kalamazoo and were thus not qualified to testify. It is within the trial court's discretion to admit or exclude expert testimony, and the trial court's decision will not be disturbed unless clearly erroneous. *Johnson v Detroit,* 79 Mich App 295; 261 NW2d 295 (1977), *Coger v Mackinaw Products Co,* 48 Mich App 113; 210 NW2d 124 (1973). It is incumbent upon the parties offering an expert witness to show that the witness possesses the necessary knowledge or skill to enable him to

competently give such testimony. *Siirila v Barrios,* 398 Mich 576; 248 NW2d 171 (1976). In Michigan, general practitioners, including general surgeons, are held to the standard of professional competence of similar physicians in their community or one similar thereto. *Siirila v Barrios, supra; Abbe v Woman's Hospital Assoc,* 35 Mich App 429; 192 NW2d 691 (1971). See MCL 600.2912(1); MSA 27A.2912(1). Therefore, an expert's testimony as to the standard of care applicable to a general surgeon must first be qualified by a showing of knowledge of the medical community in question.

In the present case the trial court ruled that the defendant's employees were general practitioners and general surgeons. The proffered expert witnesses testified that they were unfamiliar with the medical community of Kalamazoo, and the trial court held any testimony by them in regard to the applicable standard of care was inadmissible.

The plaintiffs assail the trial court's ruling on two grounds. First, the plaintiffs argue the trial court erred in ruling that Dr. Hammer was a general surgeon, and second, the plaintiffs argue that the recent case of *LeBlanc v Lentini,* 82 Mich App 5; 266 NW2d 643 (1978), warrants the application of a national standard in the case at bar.

The ruling that Dr. Hammer is a general surgeon and thus a general practitioner is within the discretion of the trial court and will not be reversed unless clearly erroneous. In reviewing the testimony adduced at trial it is found that Dr. Hammer considered himself a general surgeon and not a specialist. Dr. Hammer at one time operated on all parts of the body, but with the increasing number of specialists in the community, his practice had narrowed to the abdomen, breasts, thyroid, and the extremities. There is no showing that

Dr. Hammer held himself out as a specialist in the treatment of some particular organ or disease, and thus, it cannot be said that the trial court's ruling was clearly erroneous. See Anno: *Physicians and Surgeons: Standard of skill and care required of specialist,* 21 ALR3d 953. Therefore, the plaintiff's argument in this regard is without merit.

We next direct our attention to the question of whether *Lentini* imposes the application of a national medical standard to the case at bar. In *Lentini,* this Court held that although the locality standard is applicable in Michigan, cases may arise where the treatment in question (including the medical standard of care) is uniform throughout the United States so as to allow testimony of an expert who is unfamiliar with the locality in question. It must be noted that in *Lentini* the necessary foundation was laid showing that the treatment of the ailment in question (hiatus hernia) was well known and uniform throughout the United States. In the present case no such foundation was laid concerning the treatment of fibrocystic disease. Therefore, the national standard contemplated in *Lentini* is inapplicable, and the trial court's ruling that the proffered experts' testimony was inadmissible is upheld.

We hold that the granting of the directed verdict, insofar as it barred recovery for the alleged malpractice in regard to the treatment of fibrocystic disease, was proper.

II. *Whether the plaintiffs established a standard of care applicable to the treatment of cancer?*

It must again be noted that Mrs. Francisco testified that her consent to the mastectomy was based upon the representation that she in fact had cancer. For the purposes of this appeal we take this testimony as true, and our review is limited to

the question of whether a standard of care concerning the treatment of breast cancer was established.

In reviewing the record it is found that Dr. Franklin Cox, the Borgess Hospital pathologist at the time of Mrs. Francisco's treatment, testified that the normal procedure where there is a suspicion of cancer is to remove a specimen of tissue which may be involved.

Dr. Hammer initially testified that the suspicious nodule in the right breast was removed and sent to the laboratory before the breast was removed. Upon reviewing his records Dr. Hammer stated that the entire breast was removed and sent to the laboratory for tests, reason being that Mrs. Francisco agreed before surgery to have her breasts removed due to the fibrocystic disease.

Viewing this testimony in the light most favorable to the plaintiffs we find that there was sufficient evidence to establish the standard of care applicable to the treatment of suspected cancer of the breast. The evidence shows that the proper procedure is to perform a biopsy on a very small area of the suspected tissue. Tests for the detection of cancer are then performed on that small excised area.

In the present case the entire breasts were removed and sent to the laboratory. It is within the province of the jury to believe or disbelieve testimony adduced at trial. If the jury believed that Mrs. Francisco submitted to the operation solely upon the representation that she had cancer, then they could have found that the defendant breached its duty of care. Therefore, we hold that the granting of a directed verdict in regard to the plaintiffs' claim of mistreatment for the suspected cancerous condition was error.

We have reviewed the plaintiffs' other contentions of error and find them to be without merit.

That portion of the directed verdict insofar as it bars recovery for the alleged malpractice concerning the treatment of fibrocystic disease is affirmed. That portion of the directed verdict insofar as it bars recovery for the alleged malpractice concerning the mistreatment of suspected breast cancer is reversed.

The case is remanded for new trial with the only issues to be litigated being (1) whether Mrs. Francisco's consent was based solely upon the representation that she in fact had cancer, (2) and if so, then whether the treatment administered in the present case constituted a breach of the applicable standard of care.

We must point out that upon retrial the defendant is not barred from asserting as a defense that the surgery was performed for the treatment of fibrocystic disease.

Reversed.