MAZEY v ADAMS

Docket No. 119077. Submitted January 16, 1991, at Detroit. Decided
    April 17, 1991; approved for publication October 1, 1991, at 9:05
    A.M.
    Gail Mazey, as personal representative of the estate of Ralph V.
        Hensley, deceased, brought an action in the Wayne Circuit
        Court against Bruce Adams, D.O., Bi-County Community Hospi-
        tal, and others, alleging medical malpractice. The jury returned
        a verdict in favor of the plaintiff and against Dr. Adams of
        $60,000. The court, Lucile A. Watts, J., reduced the award by
        fifty percent in accordance with the jury's finding of compara-
        tive negligence attributable to the decedent and entered judg-
        ment for the plaintiff. Dr. Adams appealed.
            The Court of Appeals *held:*
            1. The court did not err in finding the plaintiff's expert
        witness, an allopathic physician from California who practices
        internal medicine and has a specialty in cardiology, qualified to
        testify regarding the standard of care of an osteopathic general
        practitioner. The court also did not err in finding that the
        standard of care for general practitioners in Michigan and
        California was the same.
            2. The court did not err in denying the plaintiff's motions for
        a directed verdict and judgment notwithstanding the verdict.
        Reasonable minds could disagree whether Dr. Adams breached
        the applicable standard of care. The matter was properly
        submitted to the jury.
            Affirmed.

1. WITNESSES — MEDICAL MALPRACTICE — EXPERT WITNESSES — GEN-
        ERAL PRACTITIONERS — SPECIALISTS.
    A specialist may testify with regard to a general practitioner's
        standard of care and compliance with that standard, provided

REFERENCES

Am Jur 2d, Physicians, Surgeons, and Other Healers §§ 352-356.
Modern status of "locality rule" in malpractice action against
    physician who is not a specialist. 99 ALR3d 1133.
Medical malpractice: necessity and sufficiency of showing of medical
    witness' familiarity with particular medical or surgical technique
    involved in suit. 46 ALR3d 275.

the specialist has knowledge of the standard; a member of one medical school of thought may testify regarding the standard of care applicable to members of another medical school of thought provided that that person is familiar with the applicable standard of care; what is determinative is not the geographical area in which the witness practices, but whether the witness is knowledgeable regarding the practice of the area in question.

2. WITNESSES — EXPERT WITNESSES — MEDICAL MALPRACTICE.

A physician's knowledge of the applicable standard of care about which the physician testifies as an expert witness in a medical malpractice case may be based on hearsay information ascertained from contact with other physicians.

*Rothe, Mazey, Mazey & Hamburger, P.C.* (by *Robert L. Hamburger*), for the plaintiff.

*Portnoy, Leader, Pidgeon & Roth, P.C.* (by *Bernard N. Portnoy*), for the defendant.

Before: MARILYN KELLY, P.J., and HOLBROOK, JR., and MICHAEL J. KELLY, JJ.

PER CURIAM. Plaintiff, as personal representative of the estate of Ralph V. Hensley, deceased, filed the instant medical malpractice action against defendant Bruce Adams, D.O., and others, alleging mistreatment of Mr. Hensley. Defendant Adams appeals as of right a jury verdict and award of $60,000, later reduced by fifty percent because of Mr. Hensley's comparative negligence, in favor of plaintiff. We affirm.

Dr. Bruce Adams, an osteopathic physician, is a general practitioner who had treated Mr. Hensley for approximately twenty years from 1963 through July 1984. In February 1984, Mr. Hensley underwent cardiac catheterization and triple bypass surgeries. Dr. Adams did not participate in the care of Mr. Hensley during his hospitalization. Following Mr. Hensley's release from the hospital

on March 8, 1984, he returned to the care of Dr. Adams. In June of that year, Dr. Adams referred Mr. Hensley to Dr. Kazmierski, a cardiologist, after Mr. Hensley complained of chest pains.

Dr. Kazmierski examined Mr. Hensley on June 22, 1984, and concluded that the patient needed further cardiac catheterization surgery. Dr. Kazmierski made this recommendation to the patient and also forwarded the recommendation in the form of a letter to Dr. Adams.

The patient and Dr. Adams met on July 5, 1984, and discussed Dr. Kazmierski's recommendations. Dr. Adams reviewed Dr. Kazmierski's findings with Mr. Hensley, but neither recommended nor advised against the catheterization. Dr. Adams left the decision to Mr. Hensley, who decided not to have the procedure performed.

On July 22, 1984, Mr. Hensley was hospitalized after complaining of chest pains. He immediately underwent cardiac catheterization, which disclosed occlusion of the earlier bypass. Consequently, Mr. Hensley underwent a second bypass surgery on July 26, 1984, during which it was discovered that he suffered from pericarditis, an inflammation of the pericardium. This condition prevented a successful second bypass, and the decedent did not survive the surgery.

Plaintiff presented at trial as her only expert witness the deposition testimony of Dr. G. Douglas Moir, an allopathic physician from Escondido, California. Dr. Moir practices internal medicine and has a specialty in cardiology. Over defendants' objections to the expert's qualifications to testify regarding the standard of care of an osteopathic general practitioner, Dr. Moir's deposition was read to the jury. Dr. Moir opined that Dr. Adams should have diagnosed pericarditis shortly after treatment commenced following Mr. Hensley's

February 1984 bypass and that, under these circumstances, Dr. Adams had a duty to strongly urge Mr. Hensley to follow the recommendations of Dr. Kazmierski.

Dr. Adams appeals from the jury's verdict and net award of $30,000 against him in favor of plaintiff.

The first issue raised on appeal is whether the trial court erred in finding plaintiff's sole expert witness, Dr. Moir, qualified to testify regarding the standard of care of an osteopathic general practitioner.

It is within the trial court's discretion to determine whether a witness is qualified as an expert. *Dunn v Nundkumar,* 186 Mich App 51, 54; 463 NW2d 435 (1990).

A witness must possess the necessary learning, knowledge, skill, or practical experience in order to competently testify regarding a given area of medicine. *Id.* A specialist may testify with regard to a general practitioner's compliance with the requisite standard of care of a general practitioner as long as the witness has knowledge of the standard of care about which the witness is testifying. *Siirila v Barrios,* 398 Mich 576, 593; 248 NW2d 171 (1976). Moreover, the specialist may, if qualified, testify concerning the general practitioner's standard of care. *Id.*

A witness who is a member of one medical school of thought may testify regarding the standard of care applicable to members of another school of thought provided the witness is familiar with the applicable standard of care. *Id.,* p 591. Lastly, what is determinative is not the geographical area in which the proposed expert practices, but whether the proposed expert is knowledgeable regarding the practice of the area in question.

*LeBlanc v Lentini,* 82 Mich App 5; 266 NW2d 643 (1978).

Defendant Adams first takes issue with the fact that Dr. Moir did not practice in the community for which he described the standard of care. Dr. Moir testified that, on the basis of his conversations with osteopathic general practitioners, he learned that the standard of practice for a general practitioner was national in scope. This was not contradicted by any evidence at trial. Consequently, we cannot say that the trial court abused its discretion in finding that the standard of care for a general practitioner in Michigan was not different from that of a similar practitioner in California. The weight given to the testimony was for the jury to determine. *LeBlanc, supra.*

Next, defendant Adams argues that Dr. Moir was unqualified to testify concerning the standard of care of an osteopathic general practitioner. Dr. Moir asserted as the bases of his knowledge of the applicable standard of care his discussions with general practitioners in California and his contact with osteopathic physicians during his residency at Georgetown University Hospital in Washington, D.C. An expert witness may base his knowledge of the applicable standard of care upon hearsay information ascertained from contact with other physicians. *Higgins v Detroit Osteopathic Hosp Corp,* 154 Mich App 752, 760; 398 NW2d 520 (1986). Dr. Moir also testified that he had participated in patient care management with various general practice physicians. On the basis of these facts, we do not find that the trial court abused its discretion in admitting Dr. Moir's deposition testimony. Again, the weight afforded the testimony was a matter for the trier of fact.

Next, Dr. Adams argues that the trial court erred in denying his motions for a directed verdict

and judgment notwithstanding the verdict. We disagree. Considering Dr. Moir's testimony and the remainder of the evidence in the light most favorable to plaintiff, we find that the evidence was such that reasonable minds could disagree whether Dr. Adams breached the applicable standard of care. Accordingly, the matter was properly submitted to the jury. *Lester N Turner, PC v Eyde,* 182 Mich App 396; 451 NW2d 644 (1990).

Affirmed.