BAHR v HARPER-GRACE HOSPITALS

Docket Nos. 119957, 121364. Submitted June 16, 1992, at Detroit. Decided January 19, 1993, at 9:30 A.M. Leave to appeal sought.

Elizabeth J. Bahr, as personal representative of the estate of Brian M. Bahr, deceased, brought an action in the Wayne Circuit Court against Harper-Grace Hospitals, alleging medical malpractice premised on the negligence of an intern, a resident, and various nurses. The court, Claudia House Morcom, J., entered judgment consistent with the jury's verdict in favor of the plaintiff, awarding $1.3 million in damages. The defendant appealed from that order and an order awarding plaintiff attorney fees. The appeals were consolidated.

The Court of Appeals *held:*

1. The court properly denied the defendant's motion for judgment notwithstanding the verdict. Although the plaintiff did not establish the applicable standard of care for interns and residents, there was expert testimony regarding the applicable standard of care for nurses. Liability was premised, in part, on the negligence of the nurses, and reasonable persons could have reached different conclusions with regard to the alleged negligent conduct of the nurses.

2. The applicable standard of care for interns and residents is that of the local community or similar communities. The court abused its discretion in qualifying the two doctors that the plaintiff offered as experts regarding the applicable standard of care for interns, residents, and nurses because it was not established that they were knowledgeable regarding the practice of the area in question.

3. The trial court erred in allowing, pursuant to MRE 801(d) (2)(D), the decedent's sister to offer hearsay testimony regarding

REFERENCES  .
Am Jur 2d, Evidence §§ 662 *et seq.*; Physicians, Surgeons, and Other Healers §§ 218, 348, 349, 352 *et seq.*.
Standard of care owed to patient by medical specialist as determined by local, "like community," state, national, or other standards. 18 ALR4th 603.
Modern status of "locality rule" in malpractice action against physician who is not a specialist. 99 ALR3d 1133.

a statement allegedly made by a doctor at the hospital because there was no evidence establishing that the doctor was an agent or employee of the defendant. In addition, contrary to the plaintiff's assertions, the statement was offered by the plaintiff to prove the truth of the matter asserted. The admission of the statement was not harmless error. Refusal to grant the defendant a new trial on this basis would be inconsistent with substantial justice. The judgment must be reversed and the case remanded for a new trial.

4. Because the plaintiff failed to establish the applicable standard of care for interns and residents through the use of expert testimony, on retrial she may establish the liability of the defendant only through the alleged negligence of the defendant's nurses.

Reversed and remanded.

MICHAEL J. KELLY, J., dissenting, stated that the plaintiff's experts offered ample testimony that they were familiar with the requisite standard of care for similar medical centers and similar metropolitan communities. Qualification via familiarity in similar communities is appropriate. Furthermore, any error in the admission of the hearsay testimony was harmless. The jury properly determined that malpractice occurred. The prohibition against the plaintiff's use on remand of expert testimony regarding the standard of care applicable to interns and residents is inappropriate, punitive, and forecloses a fair retrial.

1. NEGLIGENCE — MEDICAL MALPRACTICE — STANDARD OF CARE — EXPERT WITNESSES.

Expert testimony is required in a medical malpractice case to establish the applicable standard of care and to demonstrate that the defendant breached that standard; the plaintiff must establish that the expert knows what the standard is before questioning about what the standard would have required.

2. NEGLIGENCE — MEDICAL MALPRACTICE — STANDARD OF CARE — INTERNS — RESIDENTS.

The standard of care applicable in a medical malpractice case against interns and residents is that of the local community or similar communities.

3. EVIDENCE — HEARSAY — PRINCIPALS AND AGENTS.

A statement offered against a party is not hearsay if the statement is by an agent or servant concerning a matter within the scope of the agency or employment and made during the existence of the relationship; there must be some evidence of an agency relationship before the agent's declaration may be received as evidence against the principal (MRE 801[d][2][D]).

*Lopatin, Miller, Freedman, Bluestone, Erlich, Rosen & Bartnick* (by *Lee R. Franklin*), for the plaintiff.

*Garan, Lucow, Miller, Seward, Cooper & Becker, P.C.* (by *Daniel S. Saylor* and *Carol Holmes*), for the defendant.

Before: JANSEN, P.J., and MICHAEL J. KELLY and CORRIGAN, JJ.

JANSEN, P.J. Defendant, Harper-Grace Hospitals, appeals as of right from a June 2, 1989, order of judgment awarding plaintiff $1.3 million in damages. The judgment was entered following a jury trial in the Wayne Circuit Court. Defendant also appeals from a September 18, 1989, order granting plaintiff attorney fees; however, defendant's brief on appeal raises no issue relating to this order. We reverse the judgment entered in favor of plaintiff and remand the case to the trial court for a new trial.

Defendant raises several issues on appeal, only two of which require discussion. Defendant first contends that it was entitled to a directed verdict or judgment notwithstanding the verdict because plaintiff's experts did not establish the applicable standard of care for interns and residents. Although we agree that plaintiff did not establish the applicable standard of care for interns and residents, we do not believe that judgment notwithstanding the verdict would have been proper. This is so because plaintiff presented expert testimony from Edwina Eggleston, R.N., regarding the applicable standard of care for nurses, and defendant did not object to the testimony. Because defendant's liability was premised on the negligence of Dr. Huntoon, an intern, Dr. Hukku, a resident, *and* various nurses, and in light of the testimony

of . Eggleston, reasonable persons could have reached different conclusions with regard to the negligent conduct of the nurses. *Strach v St John Hosp Corp,* 160 Mich App 251, 260; 408 NW2d 441 (1987).

Generally, expert testimony is required in a malpractice case to establish the applicable standard of care and to demonstrate that the professional breached that standard. *Carlton v St John Hosp,* 182 Mich App 166, 171; 451 NW2d 543 (1989). Although the applicable standard of care for general practitioners is that of the local community or similar communities, the standard of care for a specialist is nationwide. *Thomas v McPherson Community Health Center,* 155 Mich App 700, 708; 400 NW2d 629 (1986). It is clear that interns and residents are not "specialists," and, therefore, we conclude that the applicable standard of care for such persons is that of the local community or similar communities. Cf. *Hilyer v Hole,* 114 Mich App 38, 43; 318 NW2d 598 (1982). We are of the opinion that such a conclusion is supported where, as in this case, plaintiff's complaint alleged a local standard of care and the trial court instructed the jury that the standard of care required of interns, residents, and nurses is that of ordinary learning, judgment, or skill in the local community or a similar one.

In this case, one of plaintiff's experts, Dr. Neilson, testified that he was familiar with the term standard of care and was familiar with the standard of care for interns, residents, and nurses in 1985. However, there was no testimony that Dr. Neilson was familiar with the requisite standard of care for interns, residents, and nurses in the Detroit community or similar communities. Although Dr. Neilson testified that he was familiar with the standard of care, he did not state what

the applicable standard of care was. Dr. Neilson did not state whether interns, residents, and nurses were governed by a local, as opposed to a national, standard.

Similarly, plaintiff's other expert, Dr. Crane, testified that he too was familiar with the term standard of care. However, Dr. Crane did not testify that he was familiar with the requisite standard of care regarding interns and residents, nor did he testify that he was familiar with the standard of care with regard to interns and residents in the Detroit community or similar communities.

Because interns and residents are held to a local, rather than a national, standard of care, it was incumbent on plaintiff to establish that the experts had knowledge of the standard of care in the medical community in question, or that of similar communities. See *Francisco v Parchment Medical Clinic PC,* 86 Mich App 583, 587-588; 272 NW2d 736 (1978), modified 407 Mich 325; 285 NW2d 39 (1979). In cases such as this, "counsel should clearly elicit that the expert knows the standard and what the standard was before questioning as to what that standard would have required." *Haisenleder v Reeder,* 114 Mich App 258, 265; 318 NW2d 634 (1982). In this case, although Dr. Neilson testified that he was familiar with the standard of care, he did not state "what the standard was." In this light, we cannot say that plaintiff's experts were "knowledgeable regarding the practice of the area in question," that being the Detroit community or communities similar thereto. *Mazey v Adams,* 191 Mich App 328, 331; 477 NW2d 698 (1991). The trial court abused its discretion in qualifying Drs. Neilson and Crane as experts regarding the applicable standard of care for interns, residents, and nurses.

Defendant also claims that the trial court erred in allowing the decedent's sister, Marlene Bahr, to offer hearsay testimony regarding a statement allegedly made by Dr. Gilroy. We agree with defendant.

At trial, Marlene Bahr testified that Dr. Gilroy, a neurologist who examined the decedent after his cardiac arrest, told her that the decedent should have been admitted to the intensive care unit, where he could have been watched more carefully. Over defense counsel's objection, the trial court allowed this testimony because plaintiff's counsel argued that it would be established that Dr. Gilroy was an agent of defendant and that the statement was not offered to prove the truth of the matter asserted therein.

Pursuant to MRE 801(d)(2)(D), a statement is not hearsay if the statement is offered against a party and is a statement by his agent or servant concerning a matter within the scope of his agency or employment, made during the existence of the relationship. Before an agent's declaration may be received as evidence against the principal, there must be some evidence of an agency relationship. *Przeradski v Rexnord, Inc,* 119 Mich App 500, 504; 326 NW2d 541 (1982), remanded on other grounds 417 Mich 1100.19 (1983); *Fassihi v St Mary Hosp of Livonia,* 121 Mich App 11, 14; 328 NW2d 132 (1982).

Although Marlene Bahr stated that Dr. Gilroy was the neurologist at Harper Hospital, it was not established that Dr. Gilroy was an agent or employee of defendant. Plaintiff's counsel stated that he would establish later that Dr. Gilroy was an agent of defendant, but he never did. Because there was no evidence presented to establish that Dr. Gilroy was an agent or employee of defendant,

the statement is not admissible pursuant to MRE 801(d)(2)(D).

Plaintiff's counsel further stated at trial that the statement was not being offered to prove the truth of the matter asserted and, therefore, did not constitute hearsay. However, counsel did not state why the statement was being offered. Because one of plaintiff's allegations of negligence was the fact that the decedent was not placed in the intensive care unit, we are of the opinion that the statement was offered to show that defendant was negligent in failing to place the decedent in the intensive care unit. Accordingly, the trial court abused its discretion in admitting this hearsay statement.

We are also of the opinion that the admission of the statement was not harmless error. Because one of plaintiff's allegations of negligence was that the decedent was not properly monitored and should have been placed in the intensive care unit rather than a private room, the statement is very prejudicial to defendant. Therefore, refusal to grant defendant a new trial on this basis would be inconsistent with substantial justice. MCR 2.613(A).

Accordingly, we reverse the judgment entered in favor of plaintiff and remand the case for a new trial. Because of plaintiff's failure at the original trial in this matter to establish through the use of expert testimony the applicable standard of care for interns and residents, on retrial plaintiff shall be limited to establishing the liability of defendant only through the alleged negligence of defendant's nurses.

Reversed and remanded. We do not retain jurisdiction.

CORRIGAN, J., concurred.

MICHAEL J. KELLY, J. *(dissenting).* I respectfully dissent.

The majority correctly observes that the plaintiff's experts, Drs. Neilson and Crane, testified that they were familiar with the standard of care for interns, residents, and nurses during the period covered by the treatment at issue. The experts' credentials were not impeached, and, I believe, particularly Dr. Neilson's credentials, were unassailable; his curriculum vitae showed practice experience in areas indisputably comparable to the Detroit metropolitan area. He was a teacher of interns and residents in comparable areas. If there existed some critical deficiency with regard to the voir dire of either of the experts, it should have been timely brought to the attention of the court. Presumably, the deficiency would have been cured by further direct exploration, because the court was familiar with the applicable standards and, indeed, instructed the jury correctly. There was ample testimony to confirm that the doctors were familiar with the requisite standard of care for similar medical centers and similar metropolitan communities. The majority notes that qualification via familiarity in similar communities is appropriate and meets the test. The majority concludes, however, that "we cannot say that plaintiff's experts were 'knowledgeable regarding the practice of the area in question,' that being the Detroit community or communities similar thereto." *Ante,* p 35. I conclude diametrically the opposite. If the battle lines on this issue had been clearly drawn, plaintiff's argument could have been that interns and residents in a huge metropolitan area should not enjoy the protection of a local standard of care. Cf. *Mazey v Adams,* 191 Mich App 328; 477 NW2d 698 (1991).

With regard to the error the majority finds concerning hearsay testimony regarding representations that the decedent should have been admitted to the intensive care unit, I believe any error

in this regard was completely harmless, if it was error at all. Indeed, defense counsel did not seek a curative instruction, probably because the issue was not substantive. The defining issue was whether defendant's intern and resident failed to recognize how seriously ill the decedent was and, as a result, failed to see that certain necessary tests were implemented.

There were three critical points from which the trier of fact could have determined, and in this case did determine, malpractice. The court correctly left to the jury these well-grounded issues:

1. Whether an arterial blood gas test should have been performed to determine if it was safe to give decedent fluids.

2. Whether the 0.9 percent saline solution should have been increased to three percent in view of the patient's rising sodium content.

3. Whether, having ordered the three percent saline solution administered, the defendant's physicians should have known that danger of cardiac arrest was thereby increased and that the decedent's condition should have been monitored continuously, or at least more carefully.

Plaintiff's experts testified that a blood oxygen level should have been obtained, a central venous pressure test should have been done, and the decedent should not have received the three percent solution. I would not disturb the jury's verdict.

Finally, I believe the majority has reached an inappropriate, punitive, and extraordinary sanction in attaching to its remand a prohibition against plaintiff's use of expert testimony regarding the standard of care applicable to interns and residents. Such an improvident injunction against expert testimony would appear to me to foreclose a fair retrial.

I would affirm.