BIRMINGHAM v VANCE

Docket Nos. 142620, 142631. Submitted November 16, 1993, at Detroit. Decided April 4, 1994, at 9:25 A.M. Leave to appeal sought.

Julia and Michael Birmingham brought an action in the 17th District Court against general practitioners Gary Vance and James E. Mikula, alleging dental malpractice relating to a root canal performed on one of Julia's teeth by Vance and bridge work involving the same tooth by Mikula. The plaintiffs offered the videotaped deposition of an endodontic specialist regarding standard of care. The court, Richard E. Manning, J., excluded the proffered deposition and granted summary disposition for the defendants, ruling that the witness was not qualified to testify as an expert because he was not sufficiently familiar with the standard of care expected of general practitioners locally. The Wayne Circuit Court, John A. Murphy, J., reversed and remanded for trial, ruling that the proffered witness was qualified to testify as an expert. Vance and Mikula each appealed by leave granted, and their appeals were consolidated.

The Court of Appeals *held:*

A general practitioner is subject to the standard of care expected of general practitioners locally or in a similar community, while a specialist is subject to the standard of care expected of specialists in the same field nationally. A specialist may testify with regard to the standard of care expected of a general practitioner where the specialist demonstrates a familiarity with the local standard of care.

In this case, the proffered endodontic specialist did not articulate familiarity with the standard of care expected of general practitioners in the defendants' locality or in a similar community. The district court therefore did not abuse its discretion in ruling that the specialist was not qualified to testify as an expert on the standard of care applicable to the defendants.

Reversed.

REFERENCES

Am Jur 2d, Physicians, Surgeons, and Other Healers § 218.

Malpractice testimony: Competency of physician or surgeon from one locality to testify, in malpractice case, as to standard of care required of defendant practicing in another locality. 37 ALR3d 420.

1. NEGLIGENCE — MEDICAL MALPRACTICE — STANDARD OF CARE —
   EXPERT WITNESSES.

   Expert testimony is required in a medical malpractice case to
   establish the applicable standard of care and to demonstrate
   that the defendant breached that standard.

2. NEGLIGENCE — MEDICAL MALPRACTICE — STANDARD OF CARE —
   GENERAL PRACTITIONERS — SPECIALISTS.

   A general practitioner is subject to the standard of care expected
   of general practitioners locally or in a similar community,
   while a specialist is subject to the standard of care expected of
   specialists in the same field nationally.

3. NEGLIGENCE — MEDICAL MALPRACTICE — STANDARD OF CARE —
   GENERAL PRACTITIONERS — SPECIALISTS.

   A specialist may testify with regard to a general practitioner's
   compliance with the requisite local standard of care as long as
   the witness has knowledge of the standard of care.

*Lopatin, Miller, Freedman, Bluestone, Erlich, Rosen & Bartnick* (by *Richard E. Shaw*), for Julia and Michael Birmingham.

*Small, Friedman, Toth & Baldridge, P.C.* (by *Richard L. Small* and *John M. Toth*), for Gary Vance.

*Rutledge, Manion, Rabaut, Terry & Thomas, P.C.* (by *Paul J. Manion* and *Mary L. Dresbach*), for James E. Mikula.

Before: DOCTOROFF, C.J., and SAWYER and C. J. SINDT,* JJ.

DOCTOROFF, C.J. In this consolidated dental malpractice case, defendants appeal by leave granted a June 24, 1991, Wayne Circuit Court order reversing the district court's order granting them summary disposition. On appeal, defendants raise only one issue. Each defendant claims that the circuit court erred in reversing the district court's ruling

* Circuit judge, sitting on the Court of Appeals by assignment.

that plaintiff's[1] expert was unqualified to give testimony. Reluctantly, we reverse.

Dr. Gary Vance, a general practitioner, performed a root canal on plaintiff. Thereafter, plaintiff went to Dr. James E. Mikula, also a general practitioner, where she was fitted with a bridge using the tooth on which Dr. Vance performed the root canal as an anchor tooth. Apparently, during the course of the root canal, a piece of a metal dental instrument broke off and became lodged in the mesial canal of plaintiff's tooth. Plaintiff filed suit against Dr. Vance for negligent performance of the root canal and against Dr. Mikula for using the irritated tooth as an anchor for the bridge.

As part of her case, plaintiff produced an expert witness in endodontics. Plaintiff's expert was from Springfield, Pennsylvania, and was, at one time, a teacher of endodontics at the University of Pennsylvania. Plaintiff took her expert's deposition on September 27, 1990, and sought to use the video deposition at trial. Defendants moved to strike the deposition because they were of the opinion that plaintiff's expert was not sufficiently familiar with the standard of care. The district court concluded that plaintiff's expert was not sufficiently familiar with the local standard of care, and that he misstated the standard as it applied to general practitioners. The district court granted defendants' motion to strike the expert testimony and their subsequent motion for summary disposition.

Plaintiff appealed to the circuit court, which reversed the district court's decision to exclude the deposition testimony and remanded the case for trial. The circuit court stated that it was clear that plaintiff's expert was qualified to testify regarding

---

[1] Michael Birmingham's claim is purely derivative. Throughout the course of this opinion we will use "plaintiff" to refer exclusively to Julia Birmingham, unless otherwise indicated.

the proper manner in which root canals are performed. The court reasoned that because there are national standards in place with respect to the manner in which root canals and bridge procedures are to be performed, the expert was entitled to some deference with regard to the standard of care. The court stated:

> Dr. Granite's opinion that there is a single national standard, applicable to both specialists and general practitioners is not so implausible, in the context of this case, that it can be rejected as a matter of law.

The court intimated that in circumstances where the procedure is routine and performed uniformly throughout the country, it is permissible for an expert to testify about a national standard of care, regardless of that expert's lack of familiarity with the community or with the standard of care for general practitioners.

Expert testimony is required in medical malpractice cases to establish the applicable standard of care and to demonstrate that the defendant somehow breached that standard. *Bahr v Harper-Grace Hosps,* 198 Mich App 31, 34; 497 NW2d 526 (1993). In order for expert testimony to be admitted, the witness must possess the necessary learning, knowledge, and skill, or practical experience that would enable the witness to testify competently about the area. *Mazey v Adams,* 191 Mich App 328, 331; 477 NW2d 698 (1991); *Strach v St John Hosp Corp,* 160 Mich App 251, 273; 408 NW2d 441 (1987).

The question whether a witness is qualified to testify as an expert is left to the discretion of the trial court. *Mazey, supra* at 331. The standard of care applicable to general practitioners is different

from the standard applicable to specialists. *Id.* The standard of care for general practitioners is that of the local community or similar communities, while the standard for a specialist is nationwide. *Id.; Francisco v Parchment Medical Clinic, PC,* 407 Mich 325, 328-329; 285 NW2d 39 (1979). In order for the witness to be declared an expert, counsel should elicit from the witness the applicable standard and its substance. *Bahr, supra* at 35. A specialist may testify regarding the standard of care of a general practitioner, provided that the witness has knowledge of the standard of care about which testimony is to be given. *Mazey, supra* at 331.

In the instant case, in view of the current state of the law in this jurisdiction, we reluctantly conclude that the circuit court erred in determining that the district court abused its discretion in striking the testimony of plaintiff's expert. Accordingly, we reverse the decision of the circuit court and reinstate the order granting summary disposition in favor of defendants.

A portion of the circuit court's decision was based upon excerpts from Justice WILLIAMS' opinion in *Siirila v Barrios,* 398 Mich 576; 248 NW2d 171 (1976). However, that opinion has not been adopted fully by our Supreme Court. In that opinion, Justice WILLIAMS, joined by Justice LEVIN, advocated less rigidity in the application of the "locality rule" because of advancements in technology and consolidation of medical information throughout the country. *Id.* at 625-626. Justice WILLIAMS wrote:

> It has been observed that the locality rule "is a doctrine peculiar to American law" . . . with its origin in the vast distances characteristic of our country and the apparent differences between ur-

ban and rural practice in the 19th century. [Citation omitted.]

* * *

However, the rule has been subjected to both intensive criticism and extensive change, reflecting progress in technology and communication, and changing attitudes of the medical profession itself. [*Id.* at 612-613.]

Justice WILLIAMS stated that a better course would be to focus on the state of the art, with limitations of the locality as a factor to be considered. *Id.* Justice WILLIAMS further wrote:

We would hold that the test in Michigan henceforth shall be that a general practitioner is under duty to use that degree of care and skill which is expected of a reasonably competent practitioner of the same class, acting under the same or similar circumstances, having in mind (a) the state of the art for the particular medical situation, (b) whether a specialist should reasonably have been consulted and (c) such local factors as might be pertinent. [*Id.* at 634.]

Justice WILLIAMS' opinion notwithstanding, the Court in *Siirila* unequivocally stated that a specialist may only testify regarding the standard of care applicable to a general practitioner where that specialist demonstrates a familiarity with the local standard of care (or the standard of a similar community) and with the area on which testimony is to be offered. *Id.* at 590-591, 593.

In this case, while we agree with the circuit court that there is no question that plaintiff's expert was well versed and qualified to offer expert testimony with respect to endodontic procedures, plaintiff's expert never articulated the standard of care applicable to general practitioners in the area of defendants' practice. That standard is, of course,

the standard of the local community or a similar community. *Id.* at 593.

In the course of the video deposition, plaintiff's expert continuously stated that the standard of care applicable to defendants was:

[T]he highest standard which was available in the community, that being the level of care which would be rendered by a specialist.

\*   \*   \*

[T]he standard to which a reasonable dentist might perform under like or similar circumstances should be the highest possible standard of care.

\*   \*   \*

For a specialist, that being the same standard that a general dentist should be expected to perform.

Because there is no dispute that both defendants are general practitioners, the circuit court erred in ruling that plaintiff's expert should be permitted to offer testimony regarding a specialist's standard of care in the context of this case.

Plaintiff's argument, that because both defendants were engaged in a routine and nationally recognized procedure they should be expected to adhere to a national standard of care, is compelling. We, like Justice WILLIAMS, see little utility in preserving the rigid distinctions between general practitioners and specialists in cases of this nature.

This is particularly so in light of the prolific technological and medical advances that have taken place in the eighteen years since Justice WILLIAMS wrote his concurrence in *Siirila*. In that time, communication systems have become infinitely more advanced, uniting what may, at one time, have been a more fragmented medical pro-

fession. Satellite and cable television capabilities, computer innovation, and more structured medical organizations have provided once rural disconnected communities with the ability to perform complex medical procedures under more uniform and accurate guidelines. These capabilities are especially well developed in circumstances where the general practitioner is providing a service that has become uniform throughout the nation such as a root canal or bridge work. Compare *Siirila, supra* at 615 (Justice WILLIAMS' analysis with regard to application of plaster casts and the treatment of fractures).

We believe that the standard of care articulated in Justice WILLIAMS' concurring opinion in *Siirila* is the better standard with which to judge a general practitioner. See *Siirila, supra* at 634. In his concurring opinion, Justice WILLIAMS stated:

> It is evident that today's physician operates within a milieu in which the "coach and four," *Wiggins v Piver,* 276 NC 134, 140; 171 SE2d 393, 396 (1970), has been replaced by sophisticated communication and improved transportation. "[M]edical journals, closed circuit television presentations, special radio networks for doctors, tape recorded digests of medical literature, and current correspondence courses," 23 Vand L Rev 732, are not uncommon.
>
> All licensed physicians meet minimum standards required by state licensing boards. The increasing excellence of medical schools and the free interchange of scientific information have a "consequent tendency to harmonize medical standards throughout the country." [*Id.* at 614.]

In the instant case, plaintiff's expert testified that the American Dental Association has in place uniform minimum competency requirements with regard to each procedure at issue in this case. The

circuit court found these facts significant in concluding that plaintiff's expert was qualified to give testimony.

Although we agree in principle with the circuit court, we are required to evaluate the expert testimony in light of the established guidelines. Those guidelines require that the expert be able to articulate the standard of care applicable to the general practitioner and to have either a familiarity with the local community practice or a familiarity with that type of procedure in a similar community. Inasmuch as plaintiff's expert never correctly articulated the standard applicable to general practitioners, we have no choice but to order the testimony excluded.

Plaintiff also argues that, because defendants were performing procedures regularly conducted by specialists, they should be judged according to the national standard applicable to specialists. Again, while the argument has some persuasive weight to it, the law in this jurisdiction does not support that position. There is nothing in the record to suggest that either defendant held himself out as a specialist in the procedure that he performed. In *LeBlanc v Lentini,* 82 Mich App 5, 19; 266 NW2d 643 (1978), this Court affirmed a trial court's decision to admit testimony of an expert regarding a general practitioner's standard of care where the expert testified that the procedure was so commonplace that the standard was the same throughout the nation. However, subsequent cases have preserved the locality rule for a general practitioner. See *Bahr, supra.* While we believe that a general practitioner who performs a specialized procedure that is essentially uniform throughout the country should be held to the national standard of care, the district court did not

abuse its discretion in refusing to apply *LeBlanc* to the facts of this case.

We are of the opinion that the standard by which general practitioners are now judged permits them to perform certain procedures under a less strict standard of care than that to which they should be expected to adhere, particularly in light of the advancements in communication and technology. See also *Siirila, supra* at 626 (Justice WILLIAMS expressed concern that undue emphasis on geographical boundaries could result in pockets of substandard medical practice). We firmly believe that, with limited exceptions, the locality rule is no longer a realistic measure by which to evaluate the standard of care expected of medical practitioners. We thus implore our Supreme Court to revisit this area and to adopt the modifications suggested by Justice WILLIAMS in *Siirila, supra,* to the standard of care for general practitioners. However, under the law as it currently stands, the district court did not abuse its discretion in striking the testimony of plaintiff's expert, and the circuit court erred in concluding otherwise.

Reversed.