# STATE OF MICHIGAN

# COURT OF APPEALS

KATHERINE KACMARSKY,

Plaintiff-Appellant/Cross-Appellee,

v

EDWARD W. SPARROW HOSPITAL
ASSOCIATION and SPARROW HEALTH
SYSTEM, doing business as SPARROW
HOSPITAL and SPARROW WOUND AND
HYPERBARIC CLINIC,

Defendants-Appellees/Cross-
Appellants,

and

MCLAREN HEALTH CARE CORP, INGHAM
REGIONAL MEDICAL CENTER, doing business
as MCLAREN WOUND CARE & HYPERBARIC
CENTER and MCLAREN GREATER LANSING,
MICHIGAN STATE UNIVERSITY, JOHN K.
THROCKMORTON, DPM, P.C., MATTHEW
THOMPSON, DPM, CAPITAL FOOT AND
ANKLE CENTERS, P.C., and JOSEPH
GONZALEZ, DPM,

Defendants,

and

LANSING ORTHOPEDIC, P.C., and JEFFREY
MORIN, DPM,

Defendants-Appellees.

UNPUBLISHED
October 24, 2017

No. 333175
Ingham Circuit Court
LC No. 13-001416-NH

Before: BOONSTRA, P.J., and METER and GADOLA, JJ.

PER CURIAM.

-1-

In this medical-malpractice action, plaintiff appeals as of right an order of the circuit court granting summary disposition to defendants Matthew Thomson, DPM, John K. Throckmorton, DPM, P.C., Edward W. Sparrow Hospital Association ("defendant association"), and Sparrow Health System, doing business as Sparrow Hospital and Sparrow Wound & Hyperbaric Clinic ("defendant health system"), pursuant to MCR 2.116(C)(10) (no genuine issue of material fact), based on the failure to establish the applicable standard of care. Defendant association and defendant health system have cross-appealed, arguing that the trial court erred in denying their (C)(10) motion based on a failure to establish causation. We affirm.

## I. FACTS

Plaintiff was born with epidermolysis bullosa (EB). Plaintiff described EB as "a group of inherited connective tissue diseases that cause blisters to form on the skin and mucosal membranes." Barry Singer, MD, testified that he believed the type of EB plaintiff has is "associated with an increased rate of melanoma."

In June 2011, plaintiff was examined by defendant Thomson after she presented herself at Sparrow Hospital for an "evaluation." Defendant Thomson, a "licensed Podiatric physician" employed by defendant Throckmorton, averred that plaintiff presented with "[b]ilateral foot plaques" and "[c]ellulitis with hemorrhagic bulla and abscess right foot." Defendant Thomson stated that approximately two weeks later he "performed[ d]ebridement of skin lesions bilateral feet with incision and drainage of abscess, left foot and full thickness biopsy of skin lesions." He further stated that he did a "biopsy" and that "tissue" was "sent to pathology." Defendant Thompson indicated that he saw plaintiff twice in July, once a little over two weeks following her discharge from the hospital, and once again two weeks after that. He asserted that at these follow-up appointments he "made clear to" plaintiff that he would not be treating her EB and she needed to seek further treatment elsewhere.

Plaintiff alleged that her "wound continued to increase in size," so she went to see defendant Jeffrey Morin, DPM, in December 2011. Defendant Morin worked for defendant Lansing Orthopedic, P.C., at the time. He asserted that he performed a "4 mm punch biopsy . . . on the medial aspect of the heel" to "be sent to pathology for evaluation" because "[t]he thickened skin and the exfoliation exposed granulation tissue . . . [that] ha[d] possibly converted to squamous cell carcinoma." The biopsy identified tumor cells consistent with melanoma, but the pathologist who reviewed the biopsy evaluated the biopsy incorrectly, and plaintiff's melanoma was not diagnosed at this time.

Plaintiff alleged that she then went to see defendant Joseph Gonzalez, DPM, at the Sparrow Wound & Hyperbaric Clinic in March 2012. Defendant Gonzalez treated plaintiff's left heel "ulcer" from March 15, 2012, through June 7, 2012. When plaintiff's "ulceration was not getting better," defendant Gonzalez "performed a punch biopsy" that "came back as atypical melanocytic lesion, consistent with melanoma." Singer testified that, at this point, plaintiff's melanoma was "stage 3A." Plaintiff alleged that this was an "advanced stage" of cancer and, therefore, her "treatment options were very limited." She averred that she ultimately "required a foot amputation."

Podiatrist Philip Obiedzinski, DPM, who is licensed to practice in New Jersey, was offered by plaintiff as an expert witness on the standard of care. Obiedzinski opined that the standard of care that defendant Thomson should have followed was "[w]hat a reasonable prudent podiatrist of ordinary training would do in similar circumstances." Obiedzinski denied "know[ing] anything about the community of Lansing" or "ever talk[ing] to any podiatrists that practice in Lansing." When asked whether it was his "understanding that [he was using] the correct standard of care to apply to a podiatrist in the State of Michigan," Obiedzinski responded that he "believe[s] it's a national opinion." Obiedzinski opined that defendant Thompson did not follow the proper standard of care in treating plaintiff.

Defendant Thomson asserted that he had complied with the applicable standard of care, which he indicated "is that of a Doctor of Podiatric Medicine of ordinary learning, judgment or skill in the same or similar community when presented with the same or similar circumstances." Similarly, Marc A. Borovoy, DPM, "a board certified podiatrist" who is "licensed to practice podiatry in the State of Michigan," swore that defendant Thomson "achieved" "the standard of care."

In dismissing the cause of action, the court explained that a standard-of-care expert must testify to the local standard of care for podiatrists even if the location does not alter the standard of care. The trial court specified that that meant plaintiff needed to offer a standard-of-care expert testifying about the standard of care "in Michigan from a similar community to Lansing." Accordingly, the trial court entered a written order dismissing plaintiff's claims against defendants Thomson and Throckmorton and the corresponding claims of vicarious liability against defendants association and health system.

## II. ANALYSIS

### A. STANDARD OF REVIEW

To preserve an issue for appellate review, an issue must be "raised before, addressed by, or decided by the lower court . . . ." *Gen Motors Corp v Dep't of Treasury*, 290 Mich App 355, 386; 803 NW2d 698 (2010). In this case, plaintiff argued in the trial court that Obiedzinski provided sufficient standard-of-care testimony to survive summary disposition, that the local standard of care does not apply, and that if it did, Obiedzinski could become familiar with the standard of care up until trial. Therefore, plaintiff preserved these arguments for appeal.

### B. STANDARD OF CARE

A defendant's motion for summary disposition pursuant to MCR 2.116(C)(10) tests the factual sufficiency of a plaintiff's complaint. *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 206; 815 NW2d 412 (2012). Summary disposition is appropriate under MCR 2.116(C)(10) if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law. A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ. See *Smith v Globe Life Ins Co*, 460 Mich 446, 455 n 2; 597 NW2d 28 (1999), superseded in part on other grounds by statute as stated in *Dell v Citizens Ins Co of America*, 312 Mich App

734, 742; 880 NW2d 280 (2015). The moving party "must specify the issues for which it claims there is no genuine factual dispute. Provided the moving party's motion is properly supported, . . . the opposing party must then respond with affidavits or other evidentiary materials that show the existence of a genuine issue for trial." *Skinner v Square D Co*, 445 Mich 153, 160; 516 NW2d 475 (1994), overruled in part on other grounds by *Smith*, 460 Mich at 455 n 2. The court reviewing the motion

> must consider the affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties in the light most favorable to the party opposing the motion. If the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law. [*Joseph*, 491 Mich at 206 (citations omitted).]

A plaintiff must establish four elements to sustain a medical-malpractice claim: "(1) the appropriate standard of care governing the defendant's conduct at the time of the purported negligence, (2) that the defendant breached that standard of care, (3) that the plaintiff was injured, and (4) that the plaintiff's injuries were the proximate result of the defendant's breach of the applicable standard of care." *Kalaj v Khan*, 295 Mich App 420, 429; 820 NW2d 223 (2012).

MCL 600.2912a(1) provides, in part:

> Subject to subsection (2), in an action alleging malpractice, the plaintiff has the burden of proving that in light of the state of the art existing at the time of the alleged malpractice:

> (a) The defendant, if a general practitioner, failed to provide the plaintiff the recognized standard of acceptable professional practice or care in the community in which the defendant practices or in a similar community, and that as a proximate result of the defendant failing to provide that standard, the plaintiff suffered an injury.

"[T]he standard of care for general practitioners is that of the local community or similar communities, and is nationwide for a specialist." *Bahr v Harper-Grace Hosps*, 448 Mich 135, 138; 528 NW2d 170 (1995) (citations omitted). A plaintiff must establish the local standard of care with expert testimony. *Birmingham v Vance*, 204 Mich App 418, 421; 516 NW2d 95 (1994). The expert need not practice in the local area, *Mazey v Adams*, 191 Mich App 328, 331; 477 NW2d 698 (1991), or contact local physicians, *Turbin v Graesser*, 214 Mich App 215, 219; 542 NW2d 607 (1995), but the expert must "possess the necessary learning, knowledge, and skill, or practical experience that would enable the witness to testify competently about the area," *Birmingham*, 204 Mich App at 421. Podiatrists are general practitioners who must follow the

local standard of care. *Jalaba v Borovoy*, 206 Mich App 17, 21; 520 NW2d 349 (1994), citing MCL 333.18001(1)(a)-(b).[1]

In this case, plaintiff's argument that the "local standard of care rule" is antiquated and does not apply lacks merit. MCL 600.2912a(1)(a) refers to the standard of care in "the community in which the defendant practices or in a similar community," and the Michigan Supreme Court has definitively stated that "the standard of care for general practitioners is that of the local community or similar communities," *Bahr*, 448 Mich at 138. This Court is bound by these authorities. *McGhee v Helsel*, 262 Mich App 221, 226; 686 NW2d 6 (2004) ("Courts may not rewrite the plain language of the statute and substitute their own policy decisions for those already made by the Legislature."); *People v Metamora Water Serv, Inc*, 276 Mich App 376, 387-388; 741 NW2d 61 (2007) ("It is the duty of the Supreme Court to overrule or modify caselaw if and when it becomes obsolete, and the Court of Appeals and the lower courts are bound by the precedent established by the Supreme Court until it takes such action.").[2]

---

[1] The statutory language cited is now found in § 18001(1)(c) and (f). The only other change is the inclusion of a serial comma after the word "mechanically."

[2] Plaintiff cites *LeBlanc v Lentini*, 82 Mich App 5; 266 NW2d 643 (1978), *Birmingham*, 204 Mich App 418, *Turbin*, 214 Mich App 215, and *Collins v Lefkowitz*, unpublished opinion per curiam of the Court of Appeals, issued December 13, 2011 (Docket No. 298801), in support of her characterization of the local standard-of-care rule as antiquated. In *Birmingham*, 204 Mich App at 427, the panel expressed disagreement with the rule and "implore[d the] Supreme Court to revisit this area," but nonetheless approached its analysis "under the law as it currently stands . . . ." In *Turbin*, 214 Mich App at 218-219, the majority opinion merely clarified that even if an expert does not speak with local physicians, if he sufficiently familiarizes himself with the local community he may be able to provide sufficient standard-of-care testimony. To the extent plaintiff relies on the concurring opinion in *Turbin*, we note that the opinion of one judge is clearly not binding upon us, and, at any rate, the concurring judge merely echoed the sentiment of *Birmingham* that, while the locality rule might be disfavored by some, it remains the law. See *id*. at 220.

In *LeBlanc*, 82 Mich App at 17, the Court approved of the trial court's statements that " 'there are certain areas in connection with medicine that are so well known that . . . any expert could testify as to that standard of practice,' " and that certain " 'areas of medicine . . . are commonplace in every locality, every community both large and small in the entire United States . . . .' " But these observations are not inconsistent with the local standard-of-care rule. Indeed, the Court prefaced the quotation of the above-cited remarks by the trial court by affirming that "[t]he trial court correctly ruled *that the locality standard applied* but that in some cases, local standards might be uniform throughout the United States." *Id*. (emphasis added). We also note that *LeBlanc* is not binding upon this Court under MCR 7.215(J)(1).

Further, contrary to plaintiff's assertion, the *Collins* panel did not "admit[] that the locality rule is an antiquated rule." The Court simply noted what it believed was the purpose of the rule, i.e., "to protect doctors from being held to standards that necessarily vary between

It is true that the plain language of MCL 600.2912a(1)(a) does not contain a temporal requirement regarding when an expert must become knowledgeable about the local standard of care. But defendants' filing of a motion for summary disposition pursuant to MCR 2.116(C)(10) triggered the need for plaintiff to respond with evidence establishing a genuine issue of material fact. *Skinner*, 445 Mich at 160-161. In this case, that meant evidence that plaintiff could produce an expert to establish the applicable local standard of care. MCR 2.116(I)(1) states that "the [trial] court shall render judgment without delay" "if the affidavits or other proofs show that there is no genuine issue of material fact[.]" And to the extent that there is any conflict between the timing requirements under MCR 2.116 and MCL 600.2912a(1)(a), MCR 2.116 controls. See, generally, *Staff v Johnson*, 242 Mich App 521, 530, 532; 619 NW2d 57 (2000).

Therefore, the question becomes whether plaintiff met her burden to provide evidence of a genuine issue of material fact regarding the standard of care as of the motion hearing. *Skinner*, 445 Mich at 160-161.

Obiedzinski practices in Rutherford, New Jersey. Obiedzinski described Rutherford as a "[s]mall," "blue-collar middle class" "town" with "approximately 19,000 people." He did not explain how or if these descriptors made Rutherford similar to Lansing. When asked, "I take it that since you don't know anything about Lansing, Michigan, you don't know whether your community is the same or similar to Lansing, Michigan; would that be true?" Obiedzinski responded, "That's true." Cf. *Turbin*, 214 Mich App at 218 (reversing a trial court's finding that a doctor practicing in Tallahassee, Florida, could not testify to the local standard of care because, in part, he specifically "concluded that Lansing was a similar community to Tallahassee"). Obiedzinski denied "know[ing] anything about the community of Lansing" or "ever talk[ing] to any podiatrists that practice[d] in Lansing."

When asked whether it was his "understanding that [he was using] the correct standard of care to apply to a podiatrist in the State of Michigan," Obiedzinski responded that he "believe[s] it's a national opinion." There was no other explanation regarding why a national standard should apply to Lansing or how Obiedzinski determined that Lansing is held to this national standard. Cf. *Mazey*, 191 Mich App at 331-332 (finding that a trial court did not abuse its discretion in concluding that "the standard of care for a general practitioner in Michigan was not different from that of a similar practitioner in California" when the doctor "testified that, on the basis of his conversations with osteopathic general practitioners, he learned that the standard of practice . . . was national in scope"). Therefore, to the extent that the trial court found that Obiedzinski was not qualified to testify to the local standard of care, it did not abuse its discretion. *Turbin*, 214 Mich App at 217-218 (mentioning the standard of review).

---

communities, such as differences in standards based on technology and resources." *Collins*, unpub op at 5. Indeed, the Court actually looked to the purpose of the rule in concluding that "the present case is not one in which the location of the surgery made a difference in the standard of care." *Id*. Moreover, the Court acknowledged that "[i]n 1975, faced with the argument that the locality rule should be abandoned for a more national standard, the Legislature codified the two different standards of care for medical malpractice defendants. MCL 600.2912a." *Collins*, unpub op at 2. At any rate, we note that unpublished opinions are not binding upon this Court.

Accordingly, plaintiff failed to establish a genuine issue of material fact to sustain her medical-malpractice claim against defendant Thomson, as well as her claims of vicarious liability against defendant Throckmorton, defendant association, and defendant health system. *Skinner*, 445 Mich at 160-161.

## C. MOTION FOR RECONSIDERATION

Plaintiff filed a motion for reconsideration, arguing that while the local standard of care controls, Obiedzinski's "criticisms" regarding the failure of defendants to "tak[e] a thorough and complete medical history [and] conduct a thorough physical examination, and [their action of] 'simply scraping off [plaintiff's] superficial tissue and calling it a "biopsy" ' " are "universal standards of care that apply to all podiatrists," so "further knowledge of the Lansing, MI area would prove unnecessary." Moreover, plaintiff argued, Obiedzinski could familiarize himself with the standard of care before trial, and in fact had already done so. Plaintiff attached an affidavit executed by Obiedzinski in which he swore that he "had an opportunity to review written information relating to the Lansing, MI community" and "Edward W. Sparrow Hospital and similarly situated hospitals," is "now familiar with the local standard of care for Lansing, MI and can testify as to the breaches of that local standard of care," and "believe[s] the same breaches of standard of care remain" as attested to in his affidavit of merit.

The trial court denied plaintiff's motion, reasoning that plaintiff failed to show that the trial court "made a palpable error" as is required pursuant to MCR 2.119(F). The trial court explained that Obiedzinski's deposition "clearly stated 1) that the applicable standard of care for podiatrists in Michigan is the universal standard; 2) that he did not know anything about the community of Lansing, Michigan; and 3) that he did not speak with any podiatrist practicing in Lansing." The trial court concluded that Obiedzinski was "required to be familiar with the standard of care in Lansing or a community similar to Lansing" even if his "criticisms of Defendants' care with regard to Plaintiff may have primarily involved universal standards."

As for Obiedzinski's updated affidavit, "a court has full discretion to decline to consider evidence presented with a motion for reconsideration that could have been presented the first time the issue was argued." *Yachcik v Yachcik*, 319 Mich App 24, 42; 900 NW2d 113 (2017) (quotation marks and citation omitted). There is nothing in the updated affidavit that could not have been procured before the trial court ruled on the summary-disposition motions. Thus, the trial court did not abuse it discretion in not considering the updated affidavit and in denying the motion for reconsideration.[3]

---

[3] Because of our holding that summary disposition was properly granted on the basis of a failure to establish the standard of care, we will not consider the issues raised on cross-appeal.

Affirmed.

/s/ Mark T. Boonstra
/s/ Patrick M. Meter
/s/ Michael F. Gadola